CHARLES B. WEED AND ANOTHER, ADMINISTRATORS OF JAMES HUMPHREY *vs.* HARRY M. GRANT.

*H* guarantied a note of *B & Co.*, the guarantee being indorsed on the note. *H* died and the note was presented against his estate and allowed by the commissioners. After the commissioners had passed upon it, but before they had returned their report to the court of probate, the creditor took a new note signed by the individual members of the firm of *B & Co.* and gave up the old note. The commissioners not knowing the fact reported the claim as allowed by them, and the administrators in like ignorance of it allowed the time for appealing from the report to pass by. Afterwards, on learning the facts, the administrators refused to pay the claim, and the creditor brought a suit on the probate bond to

Weed *v.* Grant.

recover the amount. On a bill in equity brought by the administrators for an injunction against the suit, it was held,—1. That the administrators had not lost their remedy by not appealing from the report of the commissioners. 2. That their remedy was not by application to the court of probate for the opening of the commission and the rehearing of the claim. 3. That the injunction ought to be granted.

Whether, after the report of commissioners has been made, a court of probate has power to open the commission, for a rehearing upon a claim allowed by them : *Quere.*

BILL in equity for an injunction against the further prosecution of an action at law.

On the 10th of April, 1855, the respondent lent $2,000 to a copartnership by the name of the American Hoe Company, composed of Lewis R. Boyd and James Humphrey, Jr., and the firm by their firm name gave their note for the amount payable on demand, which note was guarantied by James Humphrey, Sen., by the following indorsement upon it : " I hereby guarantee the within till paid. James Humphrey." The loan was made to the copartnership upon the application of James Humphrey, Sen., with whom the respondent was well acquainted and who was a man of large responsibility, he assuring the respondent that the loan was safe and that he would see every dollar of it paid. James Humphrey, Sen., died in December, 1855, and the petitioners were appointed administrators of his estate, and gave bond as such to the judge of probate. They represented the estate as insolvent and commissioners were appointed to receive claims against it. At the first meeting of the commissioners, the note with the guarantee was presented by the respondent, and with the assent of the administrators allowed as a just claim against the estate. Sometime afterwards, but before the commissioners had made their report to the court of probate, the respondent called upon the copartnership, and requested the partners to give him a new note in the place of the old one, signed jointly and severally by the individual members of the firm, and including the arrears of interest. This they did, and the old note, with the guarantee upon it, was surrendered to the firm by the respondent and cancelled. Nothing was said by either party at the time as to the effect of the transaction upon

the guaranty. The commissioners soon after made their report of claims allowed by them against the estate, and not having been informed of the surrender and cancellation of the guarantied note, reported the claim upon it as allowed. The administrators had no knowledge of the cancellation of the note until after the report of the commissioners had been made and accepted and the time for taking an appeal from it had expired. They then refused to pay the claim allowed with the other claims reported, and the respondent brought an action in the name of the judge of probate upon their administration bond, alleging as the breach the non-payment of this claim. The copartnership soon after the new note was given had become bankrupt and the note remained unpaid. The estate of James Humphrey, Sen., though represented insolvent, was largely solvent.

The bill prayed for an injunction against the further prosecution of the action on the probate bond. The superior court made a special finding of the facts, and reserved the case for the advice of this court.

*Buel* and *Hitchcock,* with whom was *Goodwin,* for the petitioners, contended that the surrender and cancellation of the . guarantied note discharged the guaranty ; that the only adequate remedy for the petitioners was by bill in equity, the case not being one where the court of probate could order that the claim should not be paid, since the fact which the petitioners set up occurred before the commissioners made their report and therefore was one which would properly have been passed upon by them, (*Peck* v. *Harrison,* 23 Conn., 118 ;) that the court of probate had no power to open the commission for the purpose of a new trial of the claim, (*Lockwood* v. *Reynolds,* 16 Conn., 303 ;) and that the respondent, having concealed the fact of the payment of the note from the administrators, could not now take advantage of their neglect to appeal from the report of the commissioners.

*Hubbard* and *G. C. Woodruff,* with whom was *Hall,* for the respondents, contended that a court of chancery has no

power to reverse the decisions of commissioners allowing a claim, nor the decree of the court of probate accepting their report, and that the only remedy was by appeal; (Rev. Stat., tit. 14, § 87; *Webb* v. *Fitch*, 1 Root, 177 ; *Holcomb* v. *Phelps*, 16 Conn., 127 ; *Gates* v. *Treat*, 17 id., 388 ; *Bissell* v. *Bissell*, 24 id., 241 ;) that the respondent had a right to trial by jury, which was violated by the transfer of the cause to this forum ; that ignorance of the exchange of the notes was no excuse, for by the exercise of reasonable diligence the fact could have been ascertained before the time for appeal had elapsed ; (2 Swift Dig., 94; *Waller* v. *Graves*, 20 Conn., 305, 310 ; *Penny* v. *Martin*, 4 Johns. Cha., 566 ;) that the court of probate was competent to grant relief by opening the commission within eighteen months after the appointment of the commissioners, and therefore the interference of chancery was unnecessary ; that the tendency of all our decisions was strongly in the direction of leaving all matters relating to estates in settlement to the exclusive jurisdiction of the courts of probate, (*Beach* v. *Norton*, 9 Conn., 182 ;) and that the respondent had at least equal equity, and in addition to that the legal advantage, and that therefore the court would not interfere. (*Chamberlain* v. *Thompson*, 10 Conn., 243.)

ELLSWORTH, J. This is an application to a court of equity to enjoin the respondent against the further prosecution of an action at law brought by him in the name of the judge of probate on a probate bond given by the petitioners as administrators of the estate of James Humphrey, senior. The breach assigned in that action is the non-payment of a note of $2,120 reported by the commissioners on the estate as a debt due from the estate to the respondent Grant, by reason of a guarantee of the note by the said James Humphrey, sen., indorsed upon it. No question is made but that the note was due at the time it was passed upon by the commissioners ; nor can there be any question, upon the facts stated in the motion, that the note was afterwards paid, though that fact was not known to the petitioners until after the report of the commissioners, allowing the claim,

had been made, and had been accepted by the court of probate, and the time for taking out an appeal from the report had expired. The note had in fact been taken up and destroyed by Lewis R. Boyd and James Humphrey, Jr., the principal debtors; the said James Humphrey, Sen., being no otherwise connected with the note than as guarantor of the same.

The commissioners not being informed of the payment of the note, which occurred after they had passed upon the claim but before their report was actually returned, as a matter of course reported the claim as justly due from the estate, and the petitioners, having in like manner no knowledge of the payment, nor any occasion to inquire how the fact was, supposing of course that the debt remained as it was when it was allowed, took no measures to have the report corrected by the court of probate or to have it reviewed on appeal to the superior court.

Now, since the respondent has been paid his note by a new note of the principal debtors, and which he accepted by giving up to them the old note as cancelled, it is clear that he can not be allowed to get payment a second time, by suit on the probate bond, or in any other mode; and the only question is, how shall the petitioners avail themselves of this their clear defense in equity. Shall they defend in the action at law on the probate bond? or shall they ask the judge of probate to open the commissioners' report? or can the action at law be arrested by injunction? We think the last an appropriate remedy, and we do not perceive any well grounded objection to it. The commissioners having allowed the claim and reported it as justly due, there may be difficulty in resisting the payment of it on the probate bond. If the claim is justly due, the non-payment of it is a breach of the bond, and it would seem to be necessary in some way to get the report amended to enable the petitioners to make defense in the suit on the bond. But can this be done? Even if the court of probate could open the commission to let in claims upon the estate not before presented or known, we are not clear that it could be opened to re-try claims in order to get them disallowed as having been improperly allowed by the commissioners.

We none of us know of any such practice, and with the view which we take of the statute are not disposed now unnecessarily to introduce a new practice on the subject, there being as we conceive another certain and sufficient remedy. We have carefully considered the suggestions made by the respondent's counsel, and are quite aware that the tendency of our decisions of late is to leave the settlement of estates as far as possible to the court of probate; but we can not see, in the matter before us, any clear, adequate and certain remedy, other than the one asked for in the petition.

It was said on the trial that the petitioners had outstaid their time, and were chargeable with laches, and ought not now to receive favor from the court. We do not so understand their position. The petitioners had no knowledge or suspicion that the note had been paid after the claim was allowed by the commissioners; nor are they chargeable with neglect of official duty in not seeking for knowledge. They were aware that the claim had been properly presented and allowed, and of course was to be paid by them, and that they were to have a remedy over; but the principal debtor in the mean time interposed and took up the note, and thereby ceased to be liable further upon it to any one; and surely the respondent had no right after this to remain silent towards these petitioners, who he knew represented a mere surety. Of all men he knew what had been done, and on every principle of justice and honor he can not be permitted, after the note has been paid and cancelled, to resist this application for relief.

We advise judgment for the petitioners.

In this opinion the other judges concurred.